UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|---|---|---|---|
| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Franklin Kang | D. James Pak |
| George Davis | Daniel Tallitsch |

**Proceedings:**          CLAIM CONSTRUCTION ORDER

## I.   INTRODUCTION

This claim construction order construes the disputed terms in U.S. Patent No. 6,629,666 ("the '666 patent"). On January 6, 2016, ShinHeung Precision Co., Ltd. ("SHC") initiated this action against Bixolon America, Inc. and Bixolon Co. Ltd. (collectively "Bixolon" or "defendants"). Dkt. 1. On January 7, 2016, SHC filed the operative First Amended Complaint ("FAC") asserting one claim for infringement of the '666 patent. Dkt. 9.

On June 28, 2016, the Court set a schedule for briefing regarding claim construction. Dkt. 39. On September 23, 2016, the parties filed a Joint Claim Construction Chart and Prehearing Statement. Dkt. 40. On September 30, 2016, the parties each filed an opening claim construction brief. Dkt. 41 ("Pl.'s Opening); Dkt. 42 ("Def.'s Opening"). On October 14, 2016, the parties each filed a responsive brief to the other's opening brief. Dkt. 43 ("Def.'s Response"); Dkt. 44 ("Pl.'s Response").

A Markman hearing was held on November 28, 2016. For the reasons stated herein, the Court adopts the construction set forth below.

## II.   OVERVIEW OF THE '666 PATENT

On October 7, 2003, the United States Patent and Trademark Office issued the '666 patent, entitled "Apparatus of a Printer for Detecting Termination of Printing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|---|---|---|---|
| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. | | |

Medium" to inventors Hong-gil Lee and Jung-yong Lee of Sansung Electronics. FAC Ex. 1. Plaintiff alleges that, with respect to the '666 patent, plaintiff is the assignee of and successor-in-interest to Samsung Electronics and is therefore the rightful owner of the '666 patent. FAC ¶ 17. The '666 patent allegedly teaches an apparatus used in certain printers for detecting when the printer has, or is about to, run out of printing medium. Id. ¶ 18. According to plaintiff, the patented apparatus is commonly used in Point-of-Service ("POS") printers like those used to print receipts from a roll of paper at retail establishments. Id. ¶ 18.

The '666 patent has 18 claims, two of which are independent (claims one and six). Id. Ex. 1. Claim one discloses:

> An apparatus of a printer for detecting a termination of a printing medium [e.g. a roll of paper], comprising:
>
> a frame, the frame housing and supporting a roll of the printing medium;
>
> printing medium detecting means for non-contact detecting of the termination or a near-termination of the printing medium according to a varying diameter of the roll of the printing medium;
>
> and position adjusting means for adjusting an initial set position of the printing medium detecting means according to an initial diameter of the roll of the printing medium;
>
> wherein the position adjusting means comprises:
> a cam pin formed on a housing; and a rotary knob rotatably mounted on the frame, and having a cam groove for linearly reciprocating the housing in cooperation with the cam pin which is contained in the cam groove and movable along the cam groove.

Id. 9:63-10:14. Claim six is substantially similar to claim one but discloses a similar apparatus having two positions for detecting a termination of a printing medium.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|---|---|---|---|

| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. |
|---|---|

The specification to the '666 patent describes a preferred embodiment of the '666 patent wherein an apparatus is capable of notifying a printer's user when the current roll of printing medium (e.g. paper) is about to be depleted. The preferred embodiment, which functions in either of two orientations, holds a roll of printing medium inside a frame. The frame is shaped such that in either orientation, as the roll of printing medium is depleted, the roll is guided towards a lower portion of the frame. In the lower portion of the frame in either orientation is a window cut through the frame. A light sensor apparatus is positioned to shine light through the window. Once the roll of printing medium is small enough to descend to the window, the light reflects off of the roll and back to a light sensor. The light sensor, in turn, activates a signal to the user that the roll is nearly depleted. Because rolls come in different sizes and with different cores, the light sensors are each attached to a housing that can be adjusted to a higher or lower position within the window. By permitted the user to adjust the light sensor position in the window, the device enables the user to adjust the timing of the signal according to the diameter at which the roll will be nearly depleted.

Plaintiff alleges that, prior to its invention, POS printers suffered several deficiencies relating principally to the challenge of adjusting internal sensors to adapt to printing mediums of different sizes or adjustments of the printing mechanism. For instance, as described in the "Background of the Invention" portion of the '666 patent specification, certain existing mechanisms for detecting a roll of printing medium required that a mechanism be in physical contact with the printing medium. Id. Ex. 1, 2:22-24. These alternative means for detecting a printing medium could only be used if printing medium roll had a hollow core. Id. 2:10. Furthermore, previous printer devices were difficult to adjust for printing medium rolls of different sizes. Id. 2:13-21. According to plaintiff, the '666 patent is aimed at solving these problems by enabling the user to easily adjust the detection mechanism in the printer for changing circumstances and by using a light sensor and window system to detect the status of the printing medium rather than a device in physical contact with the roll of printing medium. FAC ¶ 19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|----------|--------------------------|------|-------------------|
| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. | | |

## III.   LEGAL STANDARD

Claim construction begins with an examination of the intrinsic evidence of record, which includes the patent claims,[1] the specification,[2] and, if in evidence, the prosecution

---

[1] The first source courts turn to in order to define the scope of the invention is "the words of the claims themselves, both asserted and nonasserted." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).  In fact, often, "the most important indicator of meaning" of a disputed claim term "is its usage and context, within the claim itself."  Middleton, Inc. v. Minn. Mining & Mfg. Co., 311 F.3d 1384, 1387 (Fed. Cir. 2002).  Additionally, claim language cannot be interpreted differently in different claims because claim terms must be interpreted consistently.  Southwall Technologies, Inc. v. Cardinal IG Co., 54 F.3d 1570, 1579 (Fed. Cir. 1995).

[2] "When the claim language itself lacks sufficient clarity to ascertain the scope of the claims," the court should turn to the specification.  Deering Precision Instruments, LLC v. Vector Distrib. Sys., 347 F.3d 1314, 1322 (Fed. Cir. 2003).  Review of the specification is always an important part of claim construction.  Phillips v. AWH Corp., 415 F.3d 1303, 1315-17 (Fed. Cir. 2005) (en banc); see also Vitronics, 90 F.3d at 1582 ("[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term"); Renishaw PLC v. Marposs Societa Per Azioni, 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction" (citations omitted)).  However, "[a]lthough claims must be read in light of the specification of which they are a part, it is improper to read limitations from the written description into a claim."  Tate Access Floors, Inc. v. Maxcess Techs. Inc., 222 F.3d 958, 966 (Fed. Cir. 2000) (citations omitted); see also Kraft Foods, Inc. v. Int'l Trading Co., 203 F.3d 1362, 1366 (Fed. Cir. 2000) ("Although the written description may aid in the proper construction of a claim term, limitations, examples, or embodiments appearing only there may not be read into the claim").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|----------|-------------------------|------|-------------------|

| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. |
|-------|----------------------------------------------------------|

history,[3] and prior art.[4] <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582, 1584 (Fed. Cir. 1996); <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1316-17 (Fed. Cir. 2005) (en banc); <u>V-Formation, Inc. v. Benetton Group Spa</u>, 401 F.3d 1307, 1310-12 (Fed. Cir. 2005).  Courts also may use extrinsic evidence, for example dictionaries, treatises, and expert or inventor testimony, to resolve ambiguities in the disputed claim terms, but only if the intrinsic evidence does not resolve the ambiguities.[5] <u>Vitronics</u>, 90 F.3d at 1584; <u>Phillips</u>, 415 F.3d at 1317-18.  Further, technically extrinsic evidence, such as dictionaries, encyclopedias, and technical treatises, may be consulted at any time to help determine the meaning of claim terms.[6] <u>Vitronics</u>, 90 F.3d at 1584 n.6.  However, all

---

[3] The prosecution history "contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims [and] is often of critical significance in determining the meaning of the claims." <u>Vitronics</u>, 90 F.3d at 1582. In particular, "[t]he prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." <u>Southwall</u>, 54 F.3d at 1576.

[4] In construing asserted claims, courts may consider "prior art proffered by one of the parties, whether or not cited in the specification or the file history[,] . . . to demonstrate how a disputed term is used by those skilled in the art." <u>Vitronics</u>, 90 F.3d at 1584; <u>see also</u> <u>In re Cortright</u>, 165 F.3d 1353, 1358 ("Prior art references may be 'indicative of what all those skilled in the art generally believe a certain claim term means . . . .'" (quoting <u>Vitronics</u>, 90 F.3d at 1584)).

[5] "The sequence of steps used by the judge in consulting various sources is not important; what matters is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." <u>Phillips</u>, 415 F.3d at 1324.

[6] However, in <u>Phillips</u>, the Federal Circuit cautioned that "heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." <u>Phillips</u>, 415 F.3d at 1321 (holding that a court should not start with a dictionary to determine the plain meaning of a term, and only then turn to the specification in order to determine whether to narrow that meaning in light of the intrinsic evidence).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL            'O'

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|----------|--------------------------|------|--------------------|
| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. | | |

forms of extrinsic evidence are less significant to the meaning of disputed terms. Phillips, 415 F.3d at 1317-19.  All such evidence – both intrinsic and extrinsic – should be viewed from the perspective of a person of ordinary skill in the relevant art.  Markman v. Westview Instruments Inc., 52 F.3d 967, 979-80 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996).

Generally, courts begin with a "heavy presumption" that "the terms in the claim are to be given their ordinary and accustomed meaning." Johnson Worldwide Assocs., Inc. v. Zebco Corp., 175 F.3d 985, 989 (Fed. Cir. 1999); see also Gart v. Logitech, Inc., 254 F.3d 1334, 1341 (Fed. Cir. 2001).  This ordinary and customary meaning is the meaning a claim term "would have to a person of ordinary skill in the art at the time of the invention."  Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1116 (Fed. Cir. 2004).  "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Phillips, 415 F.3d at 1314.

"An accused infringer may overcome this 'heavy presumption' and narrow a claim term's ordinary meaning, but he cannot do so simply by pointing to the preferred embodiment or other structures or steps disclosed in the specification or prosecution history." CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002) (quoting Johnson Worldwide, 175 F.3d at 989-90); see JVW Enterprises, Inc. v. Interact Accessories, Inc., 424 F.3d 1324, 1335 (Fed. Cir. 2005) ("We do not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment, unless the specification makes clear that 'the patentee . . . intends for the claims and the embodiments in the specification to be strictly coextensive'" (quoting Phillips, 415 F.3d at 1323)).  Rather, "a court may constrict the meaning of a claim term in at least one of four ways." CCS Fitness, 288 F.3d at 1366.  First, the claim term will not be given its ordinary meaning "if the patentee has chosen to be his or her own lexicographer by clearly setting forth an explicit definition for a claim term." Johnson Worldwide, 175 F.3d at 990; see also Texas Digital Systems, Inc. v. Telegenix, Inc., 308 F.3d 1193, 1204 (Fed. Cir. 2002) ("Indeed, the intrinsic record may show that the specification uses the words in a manner clearly inconsistent with the ordinary meaning reflected, for example, in a dictionary definition.  In such a case, the inconsistent dictionary definition must be rejected").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|---|---|---|---|
| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. | | |

Second, a claim term will not have its ordinary meaning "if the intrinsic evidence shows that the patentee distinguished that term from prior art on the basis of a particular embodiment, expressly disclaimed subject matter, or described a particular embodiment as important to the invention." CCS Fitness, 288 F.3d at 1366-67; see, e.g., Spectrum Int'l, Inc. v. Sterilite Corp., 164 F.3d 1372, 1378 (Fed. Cir. 1998); SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1343-44 (Fed. Cir. 2001); Toro Co. v. White Consol. Indus., Inc., 199 F.3d 1295, 1301 (Fed. Cir. 1999). Third, a claim term will not receive its ordinary meaning "if the term 'chosen by the patentee so deprive[s] the claim of clarity' as to require resort to the other intrinsic evidence for a definite meaning." CCS Fitness, 288 F.3d at 1367 (quoting Johnson Worldwide, 175 F.3d at 990). Fourth, if a claim is phrased in step- or means-plus-function format, a claim term does not cover more than the corresponding structure or step disclosed in the specification, and the equivalents thereto. 35 U.S.C. § 112 ¶ 6; CCS Fitness, 28 F.3d at 1367. With regard to the specification and the prosecution history, if the plain language of the claim is to be narrowed, any disclaimer of a broader construction must be "clear and unmistakable." Cordis Corp. v. Boston Scientific Corp., 561 F.3d 1319, 1329 (Fed. Cir. 2009); Home Diagnostics, Inc. v. Lifescan, Inc., 381 F.3d 1352, 1358 (Fed. Cir. 2004).

Thus, although courts may look to intrinsic and extrinsic evidence, courts "perform this consultation" to determine whether any of the reasons for abandoning the ordinary meaning are applicable. Gart, 254 F.3d at 1341. In the absence of one or more of the circumstances set forth above, courts must follow the general rule that claim terms are to be given their ordinary meaning. Id.; Inverness Med. Switz. GmbH v. Princeton Biomeditech Corp., 309 F.3d 1365, 1370-73 (Fed. Cir. 2002) (holding that nothing in the patent's claim language, specification, or prosecution history contradicted or altered the plain meaning of the unambiguous claim term "mobility" and thus it was error for the district court to construe the claim term at issue not in accordance with its plain meaning).

## IV.   DISCUSSION

### A.   Constructions Upon Which the Parties Agree

The parties have agreed to the following constructions of claim terms:

| Term | Claims | Construction |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|---|---|---|---|
| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. | | |

| according to a varying diameter of the roll of the printing medium | 1 & 6 | according to a decreasing diameter of the roll of the printing medium |
|---|---|---|
| a housing | 14 | one or more housings |

### B.    "A Roll of the Printing Medium"

| Term | Claims | Plaintiff's Construction | Defendants' Construction |
|---|---|---|---|
| a roll of printing medium | 1 & 6 | continuous web of printing medium reeled around a cylindrical core | plain and ordinary meaning: "printing paper (such as receipts or stickers) that is rolled or wound in the shape of a cylinder" |

The parties' principal disagreement regarding the construction of the phrase "a roll of printing medium," is whether or not "a roll" of printing medium necessarily means a roll with a cylindrical core. Plaintiff contends that the term should be construed to require that a printing medium be reeled around a hollow core, like the tube at the center of a roll of toilet paper. Defendants contend that the term should be construed to also encompass any printing medium that, like a rug or sleeping bag, may be rolled in the shape of a cylinder without a hollow cylindrical core.

Plaintiff draws its proposed construction language from the specification, in which the "Description of Related Art" provides, "[g]enerally, a label printer, also called a mini-printer, prints out indicia on a sheet of printing medium such as stickers, receipts, etc., which are severed from a *continuous web of printing medium reeled around a cylindrical core*." FAC Ex. 1, 1:13-16 (emphasis added). Plaintiff argues that the '666 patent specification includes numerous references to a cylindrical core at the center of the rolled printing medium and that, therefore, SHC's proposed construction is most consistent with the intrinsic evidence.

Defendants argue that the plain and ordinary meaning of the words is that the printing medium is simply rolled or wound in the shape of a cylinder and that the patentees did not define "a roll" in a special way. According to defendants, nothing in the claims or specification purports to limit the patented device to use with rolls that have a cylindrical core. Defendants argue that construing "a roll of printing medium" to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|---|---|---|---|
| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. | | |

require rolls with cylindrical cores would improperly import a limitation into the claims from the specification.

The Court agrees with defendants. The Court begins with the "heavy presumption" that "the terms in the claim are to be given their ordinary and accustomed meaning." Johnson, 175 F.3d at 989. The ordinary meaning of "a roll" does not require that a separate core be present, nor does plaintiff contend that these words have special meaning in the art. The language of the specification upon which plaintiff relies does not appear to define "a roll," but rather purports to describe "generally" how a "label printer" works. The specification merely states that, generally, rolls of printing medium used in label printers are reeled around a cylindrical core. The foregoing language neither states that all printing medium rolls have cylindrical cores, nor that the invention requires them to have cylindrical cores.

A particular meaning is likely correct when it is "consonant with the purpose of the invention." Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc., 222 F.3d 951, 956 (Fed. Cir. 2000). In this case, the specification explains that "[t]he present invention has been made to overcome" certain identified problems. FAC Ex. 1, 2:45-46. One such problem is that other devices for detecting the near termination of a roll of printing "essentially require[] a hollow hole in the core that is reeled with the printing medium," thereby limiting their use to particular types of printing medium rolls. Id. 2:10-12. Another problem with existing detection devices, which the '666 patent sought to overcome, was the challenge of adjusting devices that relied upon a roll's hollow core, which required the user to remove certain screws "as necessitated by the particular core being used." Id. 2:19-20. In light of the foregoing passages, it is clear that the purported innovation of the invention was to permit the device to detect near termination of the printing medium regardless of the type of core a roll may have. According to the specification, the patentees sought to avoid the need for any particular core within a roll of printing material and thereby create a more adaptable means of detecting the near termination of many different roll types.

Nothing in the specification or claim language limits the invention to use with rolls that have cylindrical cores. The parties' disputed constructions of this term present the situation where a patent owner, plaintiff, seeks to improperly import a limitation into the claims from the specification. However, courts may "not import limitations into claims from examples or embodiments appearing only in a patent's written description . . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|---|---|---|---|
| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. | | |

unless the specification makes clear that 'the patentee . . . intends for the claims and the embodiments in the specification to be strictly coextensive.'" JVW Enterprises, 424 F.3d at 1335 (quoting Phillips, 415 F.3d at 1323)). Plaintiff points to no language in the specification which "makes clear" that the plaintiff intended for "a roll" to be strictly limited. Accordingly, the Court declines to construed "a roll" to mean a narrower category of things than its ordinary meaning.

The Court determines that "a roll of printing medium" should be given its plain and ordinary meaning and does not require further construction. To the extent that defendants propose a construction of the phrase's plain and ordinary meaning, the Court expresses no opinion as to its accuracy except to the extent that defendants construe the phrase to *exclude* rolls with cylindrical cores. A roll of printing medium reeled around a cylindrical core is no less "a roll of printing medium" than printing medium that has been reeled around itself in a cylindrical shape. The plain and ordinary meaning of "a roll of printing medium" encompasses both roll-types.

### C.    "Printing Medium Detecting Means"

| Term | Claims | Plaintiff's Construction | Defendants' Construction |
|---|---|---|---|
| printing medium detecting means | 1 & 6 | Recited function: non-contact detecting of the termination or near-termination of the printing medium according to a varying diameter of the roll of the printing medium.<br><br>Corresponding structure(s): (i) a window formed in the frame;<br><br>(ii) a photo sensor module positioned to emit and detect light through the window; and | Recited function: non-contact detecting of the termination or a near-termination of the printing medium according to a varying diameter of the roll of the printing medium.<br><br>Corresponding structure(s): (i) a window formed in the lowest portion of the frame;<br><br>(ii) a photo sensor module positioned to emit and detect light through the window in the lowest portion of the frame; and<br><br>(iii) a housing formed on the frame, movably supporting the photo sensor |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|---|---|---|---|
| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. | | |

| | | (iii) a housing formed on the frame, supporting the photo sensor module | module, and having an aperture through which light from the photo sensor module is passed into a limited width W |
|---|---|---|---|

Pursuant to 35 U.S.C. § 112 ¶ 6, an element in a claim may be "expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." Congress added the foregoing language in order to expressly permit a patentee to describe an invention in terms of what it will do rather by its physical characteristics. Valmont Indus., Inc. v. Reinke Mfg. Co., 983 F.2d 1039, 1042 (Fed. Cir. 1993). However, the patent's protections do not extend to any and all device structures capable of performing the recited function. The second portion of § 112 ¶ 6 confines the breadth of protection afforded to a function description to the corresponding characteristics described in the specification "and equivalents thereof." Id. When a patentee uses the word "means" in a claim, it carries the presumption that the patentee used the word to invoke application of § 112 ¶ 6. Sage Products v. Devon Industries, 126 F.3d 1420, 1427 (Fed. Cir. 1997).

The parties agree that § 112 ¶ 6 applies to the language "printing medium detecting means." The parties also agree on the function recited in the '666 patent claims, which is drawn directly from the claim language. However, the parties have two principal disagreements in regard to the structure that corresponds to the printing medium detecting means. First, defendant contends that the structure requires a window in the "lowest" portion of the frame whereas plaintiff contends that the window need not be in any particular location. Second, defendant contends that the housing supporting the photo sensor module must have "an aperture through which light from the photo sensor module is passed into a limited width." The Court will address each in-turn.

**1.     The Location of the Window on the Frame**

Plaintiff argues that "it is *not* necessary that the window be formed in the 'lowest portion' of the frame in order for the printing medium detecting means to perform the function of non-contact detecting of the termination or near termination of the printing medium." Pl.'s Opening 15-16 (emphasis original). Plaintiff asserts that the only

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|----------|-------------------------|------|-------------------|
| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. | | |

references to the lowest portion of the frame refer to the location of the roll of printing medium as it is depleted and detected by the device's sensors.

Defendants contend that the specification only describes the windows as being in the lowest portion of the frame. Defendants' argue that, where the specification discusses the roll of printing medium descending into the lowest portion of the frame, it further explains that, in said position, one end of the roll is exposed through the window and exposed to light from a photo sensor. Defendants' argue that *only if* the windows are also in the lowest portion of the frame could the bottom edge of the roll of printing medium be exposed through the window when the roll is in the lowest portion of the frame. Defendants are correct.

The function to be performed is detection of the printing medium "according to a varying diameter." The specification provides that:

> When the diameter of the roll of the printing medium is decreased to the maximum extent, and *the roll thus positioned at the lowest portion of the frame*, one end of the roll of the printing medium is exposed through the window. *At this time*, the light emitted from the photo sensor module is reflected and received by the photo sensor module, and, accordingly, the main controller (not shown) outputs the result in the form of electrical signal. In this manner, information indicating the termination or near termination of the printing medium is detected, and the information is conveyed to the user through a display or an audible alarm sound. Thus, before the printing medium is completely terminated, the user can replace the old roll of the printing medium with a new one in a timely manner.

FAC Ex. 1 7:38-52 (emphasis added) (figure number references omitted). Accordingly, the invention relies on gravity and the shape of the frame supporting the roll of printing medium to guide the roll of printing medium into lower portions of the frame as it is diminished. In order to detect the roll of printing medium at or near the time it will be depleted based on its diminishing size, the windows in the frame must be near the bottom of the frame where the roll of printing medium will only be exposed after it has already been nearly depleted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|---|---|---|---|
| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. | | |

Figures 9A and 9B of the specification make this point clearer. The specification provides that "FIGS. 9A and 9B are schematic views for explaining the respective postures of the detecting device of the printer according to the present invention." Id. 4:20-22. Each depicts an example of the frame (110), windows (111 & 112), and diminishing roll of printing medium (1 both circles):



"When the diameter of the roll of the printing medium 1 is decreased to a certain threshold where the roll of the printing medium 1 is positioned at the lowest portion of the frame 110, one end of the roll is exposed through the window 112 (see FIG. 9A)." Id. 7:11-15.

Pursuant to 35 U.S.C. § 112 ¶ 6, the function at issue here is limited to the embodiments and structures offered in the '666 patent specification and their equivalents. See Valmont, 983 F.2d at 1042. The specification only offers example structures wherein the windows are in the lowest portion of the frame. Plaintiff is correct that § 112 ¶ 6 does not permit the Court to import limitations from the specification that are unnecessary to perform the function. See Micro Chem., Inc. v. Great Plains Chem. Co., 194 F.3d 1250, 1258 (Fed. Cir. 1999). However, plaintiff does not explain how the printing medium detection means might perform its function without being in the lowest portion of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|----------|-------------------------|------|-------------------|

| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. |
|-------|-----------------------------------------------------------|

frame.  If the windows were at the top, the roll of printing medium would descend away from the window as it was depleted and it would never trigger the light sensor.  If the windows were in the middle, the light sensor would either immediately (if the roll had no hollow core) or promptly (if the sensor happened to fall in the center of a hollow center) be triggered rather than after the printing medium were nearly depleted.

Additionally, nothing in the specification or claims suggests that the inventors contemplated any smaller subdivision of the frame extending below the printing medium detecting means.  Given that the sensor apparatus is intended for "detecting of the termination or near-termination of the printing medium" according to the decreasing size of the roll, there would be no apparent use for additional subdivisions of the frame into which the roll of printing medium might continue to fall after the printing medium detecting means has notified the user of its near depletion.  By the time the roll is exposed through one of the windows it is "near-termination" (almost completely diminished) and the invention notifies the printer's user that the roll should be replaced.  The specification makes clear that the roll of printing medium descends to the lowest portion of the frame once it is near termination.  The window functions by exposing the descending bottom edge of the roll or its core to a light sensor.  If the roll is in the lowest portion of the frame and the window exposes the roll's lowest edge at that time, the window must also be in the lowest portion of the frame.

In light of the foregoing, the Court agrees with defendants that if the windows are not located in the lowest portion of the frame, the printing medium detecting means could not perform the recited function.  To do so, the windows must be cut through the lowest portion of the frame, where the roll of printing medium will be exposed after having diminished in size.[7]

_____

[7] The Court observes, however, that the patent claims do not appear to require that the windows be at the very *bottom* of the frame, as portrayed in Figures 9A and 9B, in each of the two postures, but merely in the lowest "portion."  The plain meaning of "lowest portion" is different from "bottom" as the former encompasses the entire section of the frame into which the roll of printing medium descends once it is near termination and below which there are no other subdivisions of the frame.  By giving the windows a vertical dimension, within which the entire printing medium detecting means can be adjusted up or down, the patentees plainly intended the printing medium detection means to be capable of detecting a roll of printing medium before it necessarily reached the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|---|---|---|---|
| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. | | |

### 2.    An Aperture on the Sensor Housing

In describing the preferred embodiment of the invention, the specification provides that:

> [t]he first and the second printing medium detecting means include a pair of windows formed on the frame for transmitting light, a pair of photo sensor modules for outputting electrical signals by emitting light to the windows and detecting light reflected from the windows, and a pair of housings formed on the frame for movably supporting the photo sensor modules *and having an aperture* (see FIGS. 4A and 4B) through which light from the photo sensor modules is passed into a limited Width W.

Id. 5:13-24.  Figures 4A and 4B are diagrams of light sensor housings with different types of apertures.

In light of the foregoing, defendants contend that the patentee has expressly defined the printing medium detecting means to include an aperture shaping the light from the photo sensor module.  Defendants also point out that the specification only discusses and describes embodiments of the invention with an aperture in the light sensor housing.

Plaintiff contends that the aperture is only described as an "aspect" of the invention.  Plaintiff further avers that although an aperture is part of the light sensor housing in the preferred embodiment of the invention, an aperture is not necessary to perform the claimed function by detecting the printing medium through the window.

During oral argument, defendants argued that an aperture is *necessary* to the printing medium detecting means because without an aperture, according to defendants, there would be no hole in the housing through which light could be emitted or measured by a light sensor.   During oral argument, plaintiff appeared to concede that there must be a way for light to travel from the light sensor to the printing medium and back to the light

bottom of the frame because it might, for instance, have a cylindrical core that would prevent it from lowering to the absolute bottom.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|---|---|---|---|
| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. | | |

sensor, but disputed whether an aperture was necessary.  It appears that the parties' dispute may derive from a disagreement as to the meaning of the word "aperture."  If an aperture is simply a space through which light can pass, then the plaintiff appears to agree that one is necessary.  If, however, an aperture is a space which shapes or limits the passage of light from the light sensor, then plaintiff does not agree that such an aperture is necessary to perform the recited function.

The '666 patent includes three dependent claims discussing apertures, namely, claim eleven (directed at devices "wherein the pair of housings [described by claim 10] have an aperture through which the light from the photo sensor modules is passed in a limited width"), claim twelve (claiming patent protection if there is an aperture with "a width in a range from 30% to 50% of a diameter of a light spot emitted from the photo sensor modules"), and claim thirteen (claiming patent protection if there is a slider "for adjusting a width of the aperture").  None of the foregoing suggests that the word aperture necessarily entails shaping or limiting the passage of light in a particular width. Instead, the word is used in a similar fashion to the word "window," to refer to a space through which light passes and subject to additional limitations described in claims eleven through thirteen.

The Court concludes that an aperture is necessary to perform the recited function insofar as the housing must have an aperture through which the light beam of the light sensor module can pass before then moving through a window in the frame.  The specification explains that each light sensor module emits light in a "beam spot" with diameter S.  Id. 5:48-50.  Insofar as the recited function depends upon the passage, reflection, and detection of light emitted by the light sensor modules, the beam spot must not be blocked completely by the light sensor module housing.  There must be an aperture in the housing through which light can pass.

However, the specification goes farther than this minimum aperture requirement by describing apertures of particular shapes and widths.  For instance, Figure 4B depicts a light sensor housing with beam spot (S) and an aperture (217) through which light is passed into a limited width (W):

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|---|---|---|---|
| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. | | |

## FIG.4B



The specification further provides that the use of limited width apertures, like that depicted in Figure 4B, *improve* printing medium detection accuracy rather than being *required* for printing medium detection.  See Id. 9:52-54 ("since the aperture of the housings combines the light into a predetermined width, the detection *accuracy is also enhanced*" (emphasis added)) and 5:44-46 ("The aperture *aids* in detecting the printing medium of a predetermined diameter by decreasing a detect angle of the photo sensor modules" (emphasis added)).  In light of the foregoing, it does not appear that an aperture of limited width is necessary for a light sensor to detect the printing medium roll through the window.  All that is necessary is that some portion or all of beam spot S be able to pass through the housing.  "Printing detection means" must be construed to incorporate the minimum necessary aperture without importing any limitation from the specification that is unnecessary to the recited function.

The Court's construction finds further support in the doctrine of claim differentiation.  If claims one and six disclosed only devices with limited width apertures, dependent claim eleven would be surplusage because its only addition to the other claims is its purported extension of protection to covered devices with an aperture of limited width.  See Dow AgroSciences LLC v. Crompton Corp., 182 F. App'x 978, 985 (Fed. Cir. 2006) (affirming a claim construction that avoids surplusage in the claims).

Accordingly, neither parties' proposed construction is entirely correct.  The Court construes "printing medium detection means" to have the following corresponding structure: (i) a window formed in the lowest portion of the frame, (ii) a photo sensor module positioned to emit and detect light through the window in the lowest portion of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|---|---|---|---|
| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. | | |

the frame; and (iii) a housing formed on the frame, movably supporting the photo sensor module, and having an aperture through which light from the photo sensor module is passed.

### D.    "Position Adjusting Means"

| Term | Claim | Plaintiff's Construction | Defendants' Construction |
|---|---|---|---|
| position adjusting means | 6 | Recited function: adjusting an initial set position of the first and the second printing medium detecting means according to an initial diameter of the roll of the printing medium.<br><br>Corresponding structure(s): a cam pin formed on a housing and a rotary knob rotatably mounted on the frame, and having a cam groove for linearly reciprocating the housing in cooperation with the cam pin which is contained in the cam groove and movable along the cam groove. | Recited function: adjusting an initial set position of the first and the second printing medium detecting means according to an initial diameter of the roll of the printing medium<br><br>Corresponding structure(s): (i) a first cam pin formed on a first housing and a second cam pin formed on a second housing; and<br><br>(ii) a rotary knob rotatably formed on a rotary shaft of the frame, and having a first cam groove and a second cam groove for linearly reciprocating the first housing and the second housing by defining channels to which cam pins and are constrained for cam following. |

The parties agree that the terms "position adjusting means" are governed by 35 U.S.C. § 112 ¶ 6. The parties also agree as to the recited function of the position adjusted means. The parties disagree about whether the structure necessarily requires a separate cam pin and cam groove for two separate printing detecting means housings. Plaintiff contends that it is not necessary that the structure have two cam pins and cam grooves in order to accomplish the recited function. Defendants contend that separate cam pins and cam grooves are necessary to adjust the set position of two separate printing medium detection means and that the only embodiment described by the specification to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|----------|--------------------------|------|-------------------|
| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. | | |

accomplish the recited function has two cam pins in separate cam pin grooves for each light sensor housing.  The Court adopts defendants' proposed construction.

The cam pins and cam grooves in dispute are most clearly illustrated in the specification's Figure 5A, wherein 213(223) depicts a cam pin, and Figure 6B, which



FIG.5A          FIG.6B

depicts said cam pins fitting within cam grooves (311 & 312) on a rotary knob (310).

The specification further describes the variously labeled portions of each figure.  Piece 211(221) is the "photo sensor module." FAC Ex. 1 5:21.  Piece 212(222) is a housing "for movably supporting the photo sensor module[]."  Id. 5:20-21.

The Court has already construed "printing medium detecting means" within claims one and six to include a housing akin to that depicted in Figure 5A which supports a photo sensor module.  Claim six describes an apparatus with *two* printing medium detecting means, a first and second, Id. 10:52-53, and a "position adjusting means" for adjusting *both* printing medium detecting means and their corresponding housings.  In order to determine the structure of such a position adjusting means, the Court must look to the embodiments in the specification.  See 35 U.S.C. 112 ¶ 6.  Defendants correctly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|---|---|---|---|
| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. | | |

point out that the only embodiments described in the specification with two housings for two printing medium detection means also incorporate two cam pins and two grooves, one for each housing. With respect to the preferred embodiment, the specification offers an example wherein the "first position" is with the device oriented on a horizontal plain and a "second position" oriented along a vertical plane (as though mounted to a wall). Id. 4:33-36. Thereafter, the preferred embodiment describes how two light sensors would be mounted on two separate housings, one for the vertical orientation and one for the horizontal orientation, each with its own cam and cam groove such that each can be linearly reciprocated when the rotary knob is moved. Accordingly, the claim terms must be construed according to the only structure described by the specification to accomplish the recited function, which is defendants' proposed construction.

Plaintiff relies upon a passage of the specification that provides:

The position adjusting means includes a cam pin formed on the housing and a rotary knob rotatably mounted on the frame and having a cam groove for linearly reciprocating the housing in cooperation with the cam pin which is locked in the cam groove and moved along the cam groove in a cam fashion.

 Id. 3:33-38. Said passage appears to describe the cam pin and cam groove in the singular, however, the surrounding text does not indicate that such a structure would permit two housings to be linearly reciprocated as described in claim six. Instead, this passage appears to describe a position adjusting means that would reciprocate a single housing rather than an apparatus with two light sensor housings. Such an apparatus appears to be within the meaning of independent claim one:

An apparatus comprising . . .
position adjusting means for adjusting an initial set position of the printing
   medium detecting means according to an initial diameter of the roll of the
   printing medium;
wherein the position adjusting means comprises: a cam pin formed on a
   housing; and a rotary knob rotatably mounted on the frame, and having a
   cam groove for linearly reciprocating the housing in cooperation with the
   cam pin which is contained in the cam groove and movable along the cam
   groove.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|---|---|---|---|
| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. | | |

Id. 10:5-14.  However, claim six extends beyond a single housing and uses the phrase "position adjusting means" with respect to a different structure than that of claim one. Claim fourteen makes clear that "position adjusting means" has more than one meaning within the claims.  Claim fourteen describes an apparatus "as claimed in claim 6," with a "position adjusting means comprise[d of]: . . . a rotary knob rotatably mounted on the frame, and having a first cam groove and second cam groove for linearly reciprocating the housing in cooperation with the first cam pin and the second cam pin which are contained in the first and the second cam grooves."  Id. 11:37-12:10.  If "position adjusting means" had plaintiff's proposed meaning in claim six, it would be inconsistent with claim fourteen.  Plaintiff proposes that "position adjusting means" in claim six has a single cam and cam groove, however, claim fourteen purports to claim devices "as claimed in claim 6" with, among other characteristics, two cam pins and cam grooves.

Although plaintiff asserts that two separately positioned light sensor housings can be linearly reticulated with only one cam pin and one cam groove, the specification offers no explanation of how such a structure might perform the aforementioned function. Accordingly, plaintiff seeks to avoid the requirements of § 112 ¶ 6 by seeking to construe the phrase as embracing a structure beyond that which is described in the intrinsic evidence.

Accordingly, the Court adopts defendants' proposed construction of this phrase.

E.     "According to an Initial Diameter of the Roll of the Printing Medium"

| Term | Claims | Plaintiff's Construction | Defendants' Construction |
|---|---|---|---|
| according to an initial diameter of the roll of the printing medium | 1 & 6 | according to the starting inner or outer diameter of the roll of the printing medium or its cylindrical core | according to the starting outer diameter of the roll of the printing medium |

The position adjusting means of the invention enables the user to adjust the location(s) of the light sensor(s) "according to an initial diameter of the roll of the printing medium."  The parties disagree about whether the foregoing phrase encompasses

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|----------|-------------------------|------|-------------------|

| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. |
|-------|-----------------------------------------------------------|

any inner diameter of a roll of printing medium or only an initial outer diameter of the roll.

Plaintiff contends that the preferred embodiment described in the specification describes adjusting the light sensors based upon the inner diameter of the roll of printing medium as well as the outer diameter. According to plaintiff, construing the phrase "an initial diameter" to exclude the inner diameter of the roll of printing medium would impermissibly interpret the claims in a way that excludes the embodiment described in the specification. Pl.'s Opening at 13 (citing Oatey Co. v. IPS Corp., 514 F.3d 1271, 1276 (Fed. Cir. 2008); Verizon Servs. Corp. v. Vonage Holdings Corp., 503 F.3d 1295, 1305 (Fed. Cir. 2007); Invitrogen Corp. v. Biocrest Mfg., L.P., 327 F.3d 1364, 1369 (Fed. Cir. 2003); and Vitronics, 90 F.3d at 1583).

Defendants argue that the outer diameter of a roll of printing medium is the only dimension which as an "initial" state which is subject to change. Defendants also argue that the specification distinguishes between the "initial diameter" and the "diameter of the roll of the near-terminated printing medium." Def.'s Opening at 23.

The preferred embodiment of the specification provides that:

the detect position varies according to the inner diameter of the roll on which the printing medium mounted in the frame. Therefore, the setting position of the photo sensor modules should be adjusted according to the size of the inner roll (or core) of the printing medium 1, in order to prevent occurrence of error in the information about the termination or near-termination of the printing medium.

When minute adjustment is required . . . the present invention accomplishes the adjustment with the positioning adjusting means.

More specifically, the position adjusting means adjusts the initial set position of the photo sensor modules . . . . As a result, according to the diameter of the roll of the printing medium in use, the detection points of the photo sensor modules can be adjusted higher or lower within the windows, and the initial set position of the photo sensor modules can be adjusted easily.

As described above, . . . the setting position and detection points can be variably adjusted by using the initial diameter of the roll of the printing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|----------|-------------------------|------|-------------------|

| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. |
|-------|-----------------------------------------------------------|

medium, diameter of the roll of the near-terminated printing medium, and detection points of the photo sensor modules.

FAC Ex. 1 8:28-60 (figure citations omitted).

In light of the foregoing, plaintiff's construction of the phrase better conforms to the intrinsic evidence. It is clear from the specification that the purpose of adjusting the light sensor housing is to calibrate the sensor based upon the roll's outer diameter and the prospective "near-termination" diameter of the printing medium roll so that the invention sends a signal once the roll descends to the adjusted level. The latter measure depends upon the roll's inner diameter. If the sensor is adjusted too high and the roll's initial outer diameter is relatively small, then the device may signal the user too early while there is still a substantial amount of printing medium on the roll. If the sensor is too low, and the roll includes a wide inner diameter, then the device may never signal the user even after the printing medium has run out because the roll cannot descend all the way to the light sensor's position. Accordingly, the "set position," as described in the preferred embodiment, may rely upon either the outer or inner diameter of the printing medium roll. The Court declines to construe the meaning of "according to an initial diameter" in such a way as to exclude the preferred embodiment of the invention.

Plaintiff's proposal finds further support in the patent's prosecution history. In response to a rejection by the Patent Office, the patentees included a section in which they stated:

the setting position of the photosensor modules should be adjusted *according to the size of the inner roll* of the printing medium in order to prevent occurrence of error in the information about the termination or near-termination of the printing medium.

Pl.'s Opening Ex. 2 at 3.

Additionally, plaintiff's construction is consistent with the claim language, which refers to "an initial diameter," rather than "the initial diameter," implying there may be more than one. A roll of printing medium only has one initial outer diameter, however, plaintiff's proposed construction envisions adjustment based on one or more relevant measures.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|---|---|---|---|
| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. | | |

Defendants correctly point out that the specification does not use the phrases "the initial diameter" and "diameter of the roll of the near-terminated printing medium" interchangeably. See FAC Ex. 1 8:57-59. However, the latter phrase is not an equivalent to the "inner diameter," which measures any gap in the center of a roll of printing medium. As already discussed, a roll of printing medium may have no cylindrical core. Under those circumstances, the inner diameter (approaching zero) may be quite different from the "diameter of the roll of the near-terminated printing medium" depending upon the thickness of the printing medium and how tightly it is reeled into a cylinder. Accordingly, the passage upon which defendants rely has little bearing upon the dispute as to whether an "inner diameter" may qualify as "an initial diameter." Nor is it necessarily the case, as defendants contend, that the "inner diameter" of a roll must be fixed. Where a roll is formed only by reeling printing medium around itself without being affixed to anything at its core, the inner diameter may change as the outer layers of printing medium are depleted and they exert less pressure on the inner diameter.

In light of the foregoing, the Court adopts plaintiff's proposed construction of the phrase "according to an initial diameter of the roll of printing medium."

**F.     "A First Cam Pin and a Second Cam Pin Formed on the Housing"**

| Term | Claims | Plaintiff's Construction | Defendants' Construction |
|---|---|---|---|
| a first cam pin and a second cam pin formed on the housing | 14 | a first cam pin and second pin formed on the one or more housings | a first cam pin and a second cam pin formed on each housing |

The parties disputed constructions turn upon whether or not claim fourteen requires that at least one light sensor housing have two cam pins. Claim fourteen provides:

The apparatus of a printer as claimed in claim 6, wherein the position adjusting means comprises: [1] a housing [which the parties agree is "one or more housings"]; [2] a first cam pin and a second cam pin formed on *the housing*; and [3] a rotary knob rotatably mounted on the frame, and having a first cam groove and a second cam groove *for linearly reciprocating the*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|---|---|---|---|
| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. | | |

*housing* in cooperation with the first cam pin and the second cam pin which are contained in the first and the second cam grooves and movable along the first and the second cam grooves.

FAC Ex. 1 11:37-12:10 (emphasis added).  The parties agree that "a housing" means "one or more housings," but disagree about the meaning of "the housing."  Defendants argue that, by its plain language, claim fourteen requires a first cam pin and a second cam pin on "the" housing (ie. one housing).  Defendants further point out that elsewhere the claims describe "a cam pin on *a housing*" when the patentees intended to say as much. See Id. 10:10 (describing the position adjusting means in the context of a single light sensor housing).  Plaintiff responds by arguing that nothing in the specification ever describes a single housing with multiple cam pins and that defendants' proposed construction would exclude the preferred embodiment.

The Court adopts defendants' construction of the phrase.  As an initial matter "the housing" has a plain and ordinary meaning.  The phrase encompasses one housing introduced by a definite article, "the."  Additionally, throughout the specification, the '666 patent uses the words "the housing" to refer to a single housing.  For instance, in describing the preferred embodiment, the specification provides:

As shown in FIG. 8, as the rotary lever 320 is rotated in direction a or b, the position adjusting means 300 moves *the housing* 212 in direction c or d according to the cam following movement of the first and the second cam grooves 311 and 312 and the cam pins 213 and 223. At the same time, *the housing* 222 is moved in a direction e or f.

Id. 8:43-48 (emphasis added).  As Figure 8 and the numeric labeling make clear, "the housing" is used to refer to each separate housing in the image, which moves in a line along a different axis when the rotary lever is moved:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|---|---|---|---|
| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. | | |



FIG.8

Plaintiff correctly points out that the specification does not describe any particular embodiment of the invention where any one housing has multiple cam pins, however, that does not preclude a dependent patent claim from further narrowing claim six with respect to devices where each housing has multiple cam pins. Plaintiff is not correct that defendants' construction would place the preferred embodiment outside the Patent's claims. Based on the constructions adopted herein, the patentees' preferred embodiment remains within the scope of independent claim six, among others. Nothing precludes a patentee from also protecting lesser embodiments of the same invention.

Furthermore, the doctrine of claim differentiation further supports defendants' proposed construction. See MEMS Tech. Berhad v. Int'l Trade Comm'n, 447 F. App'x 142, 151 (Fed. Cir. 2011) (discussing the requirement that dependent claims further limit independent claims without being redundant). The Court has already construed claim six as encompassing devices with two light sensor housings, each with one cam pin and one cam groove. Claim fourteen is dependent upon claim six and therefore must place an additional limitation on it. Under plaintiff's proposed construction of claim fourteen there would be no meaningful difference between claims six and fourteen. Both would encompass a position adjusting means with two cam pins and cam grooves, each controlling one light sensor housing. Under defendants' proposed construction, however, claim fourteen is narrower than claim six because it claims devices with two cam pins on each light sensor housing.

In light of the foregoing, the Court adopts defendants' proposed construction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-00109-CAS (SSx) | Date | November 28, 2016 |
|---|---|---|---|
| Title | SHINHEUNG PRECISION CO., LTD. V. BIXOLON CO., LTD. ET AL. | | |

## V.    CONCLUSION

In accordance with the foregoing, the Court concludes that:

"a roll of printing medium" does not require construction and shall be given its plain and ordinary meaning;

"printing medium detecting means" shall be construed to have the following structure: (i) a window formed in the lowest portion of the frame, (ii) a photo sensor module positioned to emit and detect light through the window in the lowest portion of the frame; and (iii) a housing formed on the frame, movably supporting the photo sensor module, and having an aperture through which light from the photo sensor module is passed;

"position adjusting means" shall be construed to have the following structure: (i) a first cam pin formed on a first housing and a second cam pin formed on a second housing; and (ii) a rotary knob rotatably formed on a rotary shaft of the frame, and having a first cam groove and a second cam groove for linearly reciprocating the first housing and the second housing by defining channels to which cam pins and are constrained for cam following;

"according to an initial diameter of the roll of the printing medium" shall be construed to mean "according to the starting inner or outer diameter of the roll of the printing medium or its cylindrical core";

"a first cam pin and a second cam pin formed on the housing" shall be construed to mean "a first cam pin and a second cam pin formed on each housing."

IT IS SO ORDERED.

|  | 00 | 02 |
|---|---|---|
| Initials of Preparer | CMJ | |